ORAL ARGUMENT SCHEDULED FOR FEBRUARY 10, 2026

**No. 25-5219**

IN THE
**United States Court of Appeals**
**For the District of Columbia Circuit**

The Bopp Law Firm, PC
*Appellant*
v.
True the Vote, Inc.,
*Appellee*,
Public Interest Legal Foundation, Inc.,
Foley & Lardner, LLP,
*Appellees*,
Internal Revenue Service, et. al.,
*Appellees*

On Appeal from the United States District Court for the District of Columbia,
No. 1:13-cv-00734-RBW, Honorable Reggie B. Walton,
U.S. Senior District Judge

# Brief of Appellants

James Bopp, Jr.
Jeffrey P. Gallant
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
*Attorneys for Appellant*

**Certificate as to Parties, Rulings, and Related Cases**

Pursuant to Circuit Rule 28(a)(1), counsel for Appellants hereby certify as follows:

**(A) Parties, Intervenors, and Amici**

1. The Plaintiff in the district court was True the Vote, Inc. ("**TTV**").

2. The Defendants in the district court were the Internal Revenue Service; the United States; Steven T. Miller,[1] Lois Lerner, Susan Maloney, Ronald Bell, Janine Estes, Faye Ng, certain unknown employees of the IRS, William Wilkins, Holly Paz, Cindy M. Thomas, Steven Grodnitzky, David Fish, Michael Seto, in their official and individual capacities; Daniel Werfel, in his official capacity; and Douglas H. Shulman in his individual capacity.

3. Nonparty Petitioners/Movants in the district court were The Bopp Law Firm, PC, ("**BLF**"), Foley & Lardner LLP, Public Interest Legal Foundation, Inc., and the Center for Constitutional Jurisprudence (collectively, **"Former Attorneys**").[2]

---

[1]Steven T. Miller and Daniel Werfel each served as Acting Commissioner of the Internal Revenue Service at various times during the litigation, were named as defendants in their official capacities as Commissioner, and were substituted as parties when replaced by their successor in office.

[2]No counsel has made an appearance on appeal for The Center for Constitutional Jurisprudence ("**CCJ**"). CCJ appeared as counsel for the Plaintiff

4. Intervenor below was the Center for Investigative Reporting, Inc.

5. The Appellant is non-party Petitioner/Movant The Bopp Law Firm, PC and Appellees are non-party Petitioners/Movants Foley & Lardner LLP, and Public Interest Legal Foundation, Inc. *See supra*, n.2.

6. Counsel for Defendants Internal Revenue Service, the United States, and the "line level" Defendants have advised that none of these parties intend to participate in this appeal. *See* Doc. #2122214 (6/25/2025), and Doc. #2120747 (6/13/2025), respectively.

7. Counsel for True the Vote, Inc, Plaintiff below, has advised that True the Vote, Inc. does not intend to participate in this appeal. *See* Doc. #2124730 (7/10/2025).

**(B) Ruling under Review**

The ruling under review is the May 30, 2025 Order by the District Court for the District of Columbia (R. Walton) in Civil Action 1:13-cv-000734-RBW (JA 73, Memorandum Opinion at JA 56, *True the Vote, Inc. v. IRS*, No. 13-734, 2025 U.S. Dist. LEXIS 103491), denying The Bopp Law Firm, PC's amended motion to

---

TTV below along with Foley & Lardner LLP, and Public Interest Legal Foundation, Inc. and CCJ appeared, by counsel, at the lower court's hearing (August 23, 2024) on The Bopp Law Firm, PC's Motion to Enforce its charging lien (ECF No. 229); its interests in this appeal are, ostensibly, concurrent with those of Appellees Former Attorneys.

enforce its charging lien (JA 53). The ruling denied that BLF had a valid charging lien under Indiana law.

**(C) Related Cases**

Appellant The Bopp Law Firm, PC knows of no other cases that present substantially similar issues as those raised in this appeal.

The underlying case has twice previously been before this Court. On December 19, 2014, Plaintiff TTV appealed, seeking review of the District Court's order granting dismissal to defendants. *See True the Vote, Inc. v. IRS*, 831 F.3d 551, 564 (2016) (affirming in part, reversing in part, and remanding); *cert. denied*, *True the Vote, Inc. v. Lerner*, 580 U.S. 1115 (2017).[3]

On October 11, 2023 (ECF No. 252) Defendant The United States appealed the lower court's order awarding attorneys' fees, *True the Vote, Inc. v. IRS*, 425 U.S. App. D.C. 82, 85, 831 F.3d 551, 554 (2016), and moved to voluntarily dismiss the appeal on February 6, 2024 (Order, Doc. #2038467 (Feb. 16, 2024).

This case has not previously been before any other court of appeals.

---

[3]Then-Appellant TTV identified *Z St. v. Koskinen*, 416 U.S. App. D.C. 201, 205, 791 F.3d 24, 28 (2015), and *Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236 (D.D.C. 2014) (appeal filed 1/15/15) as presenting substantially similar issues as those involved in that appeal. Neither of these cases, in the district court, or on appeal, presented issues substantially similar as those involved in this appeal.

## Corporate Disclosure Statement

Appellant The Bopp Law Firm, PC is an Indiana Professional Corporation. It has no parent corporation and has no publicly held corporation that owns 10% or more of its stock.

/s/Jeffrey P. Gallant
James Bopp, Jr., Ind. Bar No. 2838-84
Jeffrey P. Gallant, Va. Bar No. 46876
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
jgallant@bopplaw.com
*Attorneys for Appellant*

## Table of Contents

Certificate as to Parties, Rulings, and Related Cases . . . . . . . . . . . . . . . . . . . . . . . . ii

(A) Parties, Intervenors, and Amici . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

(B) Ruling under Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

(C) Related Cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Corporate Disclosure Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vi

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . viii

Glossary . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Issues Presented for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Statutes and Regulations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

The Extended Litigation Over Attorney's Fees Under the EAJA . . . . . . . . . 3

The History of Disputes Over Attorneys' Charging Liens in this Case . . . 10

Summary of the Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

I. Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

II. The District Court Abused its Discretion in its Consideration of

the Validity of BLF's Lien. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

A. The discretion afforded equitable remedies is not the applicable standard. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

B. The court was exercising inherent power. . . . . . . . . . . . . . . . . 33

C. The District Court abused the discretion afforded the use of its inherent power. . . . . . . . . . . . . . . . . . . . . . . . . . 36

III. The District Court erred in finding BLF did not have an equitable charging lien under Indiana law. . . . . . . . . . . . . . . . . . . . . 41

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

## Table of Authorities

***Cases***

*Alden v. White*, 68 N.E. 913 (Ct. App. 1903). . . . . . . . . . . . . . . . . . . . . . . . . . 46-47

*Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240 (1975) . . . . . . . . . 33

*Blankenbaker v. Bank of Commerce*, 85 Ind. 459 (1882) . . . . . . . . . . . . . . . . . . . . 45

*Browne v. Waldo*, No. 2:20-CV-196-JVB-APR, 2023 WL 2482847 (N.D. Ind. Feb. 23, 2023) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41

*Cellwave Tel. Servs. L.P. v. FCC*, 30 F.3d 1533 (D.C. Cir. 1994) . . . . . . . . . . . . 30

*Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991) . . . . . . . . . . . . . . . . . . . . . . 33, 35-36

*Cont'l Cas. Co. v. Kelly*, 106 F.2d 841 (D.C. Cir. 1939). . . . . . . . . . . . . . . . . . 34-35

*Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217 (D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Hammond, W. & E. C. R. Co. v. Kaput*, 110 N.E. 109 (Ind. Ct. App. 1915). . . . . 44

*Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366 (S.D.N.Y. 2018) . . . . . . . . . 31

*Justice v. Justice*, 16 N.E. 615 (1888) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 43

*Koons v. Beach*, 46 N.E. 587 (Ind. 1897) . . . . . . . . . . . . . . . . . . . . . . . . . . 41-47

*Koons v. Beach*, 147 Ind. 137, 45 N.E. 601 (Ind. 1896) . . . . . . . . . . . . . . . . . 45- 46

*Langnes v. Green*, 282 U.S. 531 (1931). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Linchpins of Liberty v. United States*, 71 F. Supp. 3d 236 (D.D.C. 2014) . . . . . . iv

*Link v. Wabash R. Co.*, 370 U.S. 626 (1962) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

*Lyman v. Campbell*, 182 F.2d 700 (D.C. Cir. 1950) . . . . . . . . . . . . . . . . . . . . . . . . 34

*Martens v. Hadley Mem'l Hosp.*, 753 F. Supp. 371 (D.D.C. 1990) . . . . . . . . 33-35

*Moran v. Ruan Logistics Corp.*, 652 F. Supp. 3d 921 (S.D. Ohio 2023) . . . . . . . 31

*Nix v. Billington*, 448 F.3d 411 (D.C. Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Ohio Willow Wood Co. v. ALPS S., LLC*, No. 2:04-cv-1223, 2019 U.S. Dist. LEXIS 103589 (S.D. Ohio June 20, 2019) . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Patton v. State*, 507 N.E.2d 624 (Ind. Ct. App. 1987) . . . . . . . . . . . . . . . . . . . . . . 44

*Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98 (D.D.C. 2016). . . . . . . 34

*Peterson v. Islamic Republic of Iran*, 724 F. App'x 1 (D.C. Cir. 2018) . . . . . . . . 34

*Petroleum Expl., Inc. v. Pub. Serv. Com.*, 304 U.S. 209 (1938) . . . . . . . . . . . . . . 31

*Roadway Express v. Piper*, 447 U.S. 752 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . 35

*Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991). . . . . . . . . . . . . . . . . . . . . . 30, 41

*SFR Invs. Pool 1, LLC v. NewRez LLC*, No. 2:22-cv-195, 2022 U.S. Dist. LEXIS 208593 (D. Nev. Nov. 17, 2022). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Shepherd v. ABC*, 62 F.3d 1469 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . 30, 34-35

*Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161 (1939) . . . . . . . . . . . . . . . . . . . . . . 33

*Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157 (2d Cir. 2006). . . . . . . . . . . . . . . . . 32

*True the Vote, Inc. v. IRS*, 425 U.S. App. D.C. 82, 831 F.3d 551 (2016) . . . . . . . iv

*True the Vote, Inc. v. IRS*, 831 F.3d 551 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . iv

*True the Vote, Inc. v. IRS*, No. 13-734, 2024 U.S. Dist. LEXIS 97502 (D.D.C. May 31, 2024) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-9, 16, 20

*True the Vote, Inc. v. IRS*, No. 13-734, 2025 U.S. Dist. LEXIS 103491. iii, 31, 38, 41-42, 44-46

*True the Vote, Inc. v. Lerner*, 580 U.S. 1115 (2017) . . . . . . . . . . . . . . . . . . . . . . . . iv

*Z St. v. Koskinen*, 416 U.S. App. D.C. 201, 791 F.3d 24 (2015) . . . . . . . . . . . . . . . iv

***Statutes and Regulations***

5 U.S.C. § 702. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

26 U.S.C. § 743l . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1346(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 1367 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2201 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

28 U.S.C. § 2412 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

***Other Authorities***

Black's Law Dictionary (7th Ed.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 35, 42

## Glossary

| **Term** | **Definition** |
| --- | --- |
| BLF | The Bopp Law Firm, PC |
| EAJA | Equal Access to Justice Act 28 U.S.C.S. § 2412 *et seq.* |
| Former Attorneys | Foley & Lardner LLP, Public Interest Legal Foundation, Inc., and the Center for Constitutional Jurisprudence, collectively |
| Government | Defendants United States of America, Internal Revenue Service, and any Commissioner thereof. |
| TTV | Plaintiff True the Vote, Inc. |
| PILF | Public Interest Legal Foundation (formerly ACTRIGHT LEGAL FOUNDATION) |

## Statement of Jurisdiction

The United States District Court exercised jurisdiction over the underlying case pursuant to 26 U.S.C. § 7431, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 2201 (Declaratory Judgment Act), and 5 U.S.C. § 702, and 28 U.S.C. § 1346(e); the District Court exercised jurisdiction over this claim pursuant to 28 U.S.C. § 1367.

This Court has jurisdiction over the District Court's order disposing of Appellant's Motion pursuant to 28 U.S.C. § 1291 as a "post-judgment proceeding['s] . . . final decision." *Nix v. Billington*, 448 F.3d 411, 415 (D.C. Cir. 2006). The District Court entered the order on May 30, 2025, and BLF timely filed its Notice of Appeal on June 11, 2025.

## Issues Presented for Review

1. Whether the district court erred by allowing litigation over the validity of BLF's charging lien to continue when no interested party objected to the lien or offered or advanced a legally cognizable objection and by adjudicating the validity of BLF's charging lien on the basis of substantive legal arguments that were never made, prompted, or suggested by any interested party.

2. Whether the district court erred in its application of Indiana law to the question of whether Appellant BLF's charging lien was valid.

## Statutes and Regulations

The text of 28 U.S.C. § 2412 is set forth in the Addendum.

## Statement of the Case

This appeal caps a case that began in May 2013. The claims were resolved on the merits by a consent order on January 19, 2018. The litigation over the amount of the attorney's fees award ("**EAJA award**") and the proper distribution of the EAJA award has now stretched well over seven years.

***The Extended Litigation Over Attorney's Fees Under the EAJA***

After securing the consent order for relief on the merits, BLF filed TTV's request for an EAJA award of attorney's fees, including a request for bad faith enhanced hourly rates, on February 20, 2018. ECF No. 151. The Government filed an opposition on March 3, 2018, making four specific objections to time entries and arguing that the Government's position was substantially justified and that neither the relief achieved nor the consent order or this Court's ruling were sufficient to confer prevailing party status on TTV. ECF No. 152.

On April 11, 2018, BLF filed TTV's reply to the Government's arguments, and filed a supplemental request for the final work on the fee application and the reply on April 18. ECF Nos. 155, 157. Eleven months later, the parties briefed whether oral argument was needed. ECF Nos. 158-160.

On May 30, 2019, the District Court issued an order granting TTV's request for an award of attorney's fees, including bad faith enhanced rates, and held in abeyance the determination of the amount pending further briefing by the parties on the proper hourly rates to be applied. ECF Nos. 161-62.

In response, on June 13, 2019, BLF submitted declarations from the firms working on the matter, declarations from attorney practitioners in the D.C. area evidencing the prevailing market hourly rates and argument and evidence for applying "LSI Matrix" rates for work subject to the bad faith enhancement. ECF Nos. 165-165-26. The next day, BLF filed TTV's request for fees for work requested by the court, ECF No. 166 *et seq.*, and on June 17, filed a notice of supplementary authority, ECF No. 167, regarding this Court's opinion in *DL v. D.C.*, 924 F.3d 585 (D.C. Cir. 2019), which rejected the "USAO II Matrix" as reliable evidence of the prevailing market rates for the D.C. market.

On June 27, 2019, in response to the court's Order, the Government filed what it styled as an opposition to the second supplemental request for fees—in which it agreed that LSI Laffey Matrix should be used—and raised 1875 color-coded objections to TTV's original fee request. The Government's response objected to time entries valued at more than $400,000 spread over 550 pages of records, and requested a 33% across-the-board reduction of the remaining hours.

ECF No. 169-169-17. It filed on the same date a 9 page motion to reconsider the court's application of the bad faith enhancement to hourly rates. ECF No. 170.

BLF secured leave to file responses. The majority of the 1875 objections were for work Former Attorneys had performed, and over a period of 12 days, using its extensive experience in statutory attorney's fees and with extended discussions, review, input and work of Former Attorneys, BLF drafted responses to each of the objections. ECF Nos. 176-176-14. BLF drafted and filed the responses to the supplemental fee opposition and the motion for reconsideration on July 5 and July 11, 2019. ECF Nos. 172, 173.

On August 2, TTV moved to strike the Government's 1875 objections as an untimely and waived second response to the fee application, filed some sixteen months before. ECF No. 177-177-2, ECF No. 179 (Reply). On September 4, BLF filed TTV's supplemental request for attorney's fees for the responses to the Government's filings (ECF Nos. 171-173, 176-177, 179). ECF No. 180. This request included the time spent by Former Attorneys responding to the objections, noted above.

Just over a year later, on September 23, 2020, the District Court filed an order granting attorney's fees for the underlying litigation (ECF No. 151) and fees for work on the first fee motion (ECF No. 157) and denying fees for all other work

on fees; the order granted the Government's motion to reconsider in part the bad faith enhancement of hourly rates (ECF No. 170), denied TTV's motion to strike the Government's 1875 objections as untimely and waived (ECF No. 177),[4] and ordered a hearing for October 22, 2020. ECF Nos. 183, 184. The District Court ordered the parties to "be prepared to advise the Court regarding the exact amount owed to the plaintiff in attorneys' fees, *consistent with the court's ruling in its Memorandum Opinion issued on this same date*." ECF No. 183 (emphasis added).

On October 20, 2020, TTV filed a response complying with the order, calculating that the amount of award, consistent with the conditions in the Order, was $788,539.30. This total excluded the time adjusted by TTV in its response to the Government's second opposition, did not apply the bad faith enhanced rates to all compensable time, and reflected the denial of fees, costs, and expenses for the second, third, and presumably, its fourth supplemental requests for fees (later filed as ECF Nos. 188-188-4). TTV's notice expressly objected to the denial of the bad faith enhanced rate to all compensable hours and the denial of fees for the work in

---

[4]Compensation for this work was denied by the court in denying the third supplemental request for attorney's fees, ECF No. 180-180-8. That is, the court denied compensation for the time that BLF and Former Attorneys spent responding to the court's request for briefing on the proper hourly rates to be applied, responding to the 1875 objections to the original fee request that the Government filed in response to that request, and all the related and subsequent briefing.

pursuit of attorney's fees presented in the supplemental requests. ECF No. 186, 1 n.1, 4.

On October 21, 2020 the Government filed its notice of compliance with the Order, noting a disagreement between the parties and an ambiguity in the Order (ECF No. 183) as to what reductions to the EAJA were to be applied to be in accordance with the court's opinion. ECF No. 187.

On October 21, 2020, TTV filed, under seal,[5] a motion to quash Former Attorneys' charging lien. ECF Nos. 189, 189-1-7.[6]

On October 18, 2022, TTV filed a notice of supplemental authority notifying the District Court of cases in this Circuit supporting the position that bad faith enhanced hourly rates apply to all compensable hours in EAJA "subsection (d)" cases. ECF No. 209.

On April 20, 2023, the District Court denied TTV's fourth supplemental request for attorney's fees, clarifying the reductions to be taken from the EAJA

---

[5]All of the filings regarding the motion to quash were eventually unsealed by order of the District Court on May 31, 2024, ECF No. 268, granting the request of the Center for Investigative Reporting, Inc. who filed to intervene in the case and to gain access to records under seal in January 2023. TTV and certain of the Government defendants opposed; there is no record of Former Attorneys' position. The order is also available at *True the Vote, Inc. v. IRS*, No. 13-734, 2024 U.S. Dist. LEXIS 97502 (D.D.C. May 31, 2024).

[6]The filing included a copy of TTV's agreement with BLF. ECF No. 189-7.

award, and scheduling a status conference for June 23, 2023 to discuss the amount and payment of the EAJA award, the motion for intervention and access to sealed records, *supra* n.7, and "outstanding requests related to" TTV's motion to quash Former Attorneys' charging lien. ECF No. 227.[7]

On July 5, 2023 the Government, Former Attorneys, and BLF appeared before the District Court to discuss the amount of the EAJA award to TTV, to schedule its payment, and to hear argument on TTV's motion to quash Former Attorneys' charging lien, Transcript at JA 20. Based on a prior ruling and hearing no disagreement, the court determined the amount due TTV as $788,539.30.[8] This was incorporated into the court's August 15 Order. *True the Vote, Inc. v. IRS*, No. 13-734, 2023 U.S. Dist. LEXIS 170599, at *17 (D.D.C. Aug. 15, 2023).

In that Order, the court finalized the EAJA award in the amount of

---

[7]On June 21, the status conference was continued to July 5, 2023. ECF No. 233, and the parties were instructed to be prepared to discuss the amount of the EAJA award to TTV, the schedule for its payment, and to hear argument on TTV's motion to quash Former Attorneys' charging lien.

[8]This amount had been calculated in October 2020, with the court's instruction that it be consistent with the court's ruling in its Memorandum Opinion, ECF No. 184, which did not apply the bad faith enhanced rates to all compensable time, and denied fees, costs, and expenses for the second, third, and fourth supplemental requests for fees. In October 2020, TTV expressly objected to the denial of the bad faith enhanced rate to all compensable hours and the denial of fees for the supplemental requests.

$788,539.30, and ordered that the Government deposit that amount into the registry of the Clerk of the Court. *True the Vote, Inc.*, 2023 U.S. Dist. LEXIS 170599, at *17. It also ordered Former Attorneys and BLF to file supplemental briefing addressing, among other things, the amount of attorneys' fees claimed to be subject to the respective charging liens,[9] and set a hearing for October 18, 2023. *Id.* at *18.

On October 11, 2023, the Government filed a notice of appeal of the August 15, 2023 Order, and on February 16, 2024, the appeal was voluntarily dismissed. The funds were deposited into the registry of the Clerk of the Court on March 26, (Docket Entry Dated March 26, 2024). On March 27, Former Attorneys moved the District Court to distribute the EAJA award; BLF moved for distribution on April 8, 2024. The distribution awaits the resolution of litigation over the attorney's charging liens of Former Attorneys and BLF.

[9]The salient points made in that briefing appear *infra*.

***The History of Disputes Over Attorneys' Charging Liens in this Case***[10]

Former Attorneys withdrew from the case in February 2017, and on May 5, 2017, filed a notice of attorney's charging lien, based on its original, 2013 agreement with TTV. (ECF No. 142).

TTV moved to quash the lien, ECF No. 190 *et seq.* (Oct. 21, 2020), arguing that by its express terms, the 2017 fee agreement with Former Attorneys superseded the 2013 agreement on which Former Attorneys had based the charging lien and the 2017 agreement could not be the basis of a lien because it was premised on settlement with the Government rather than judgment proceeds

[10]The history of attorneys' charging lien disputes overlaps chronologically with that of the EAJA litigation provided immediately *supra*. Appellant submits that because of the importance of the charging lien dispute to this appeal, a more detailed history that includes the positions and arguments is needed.

In sum, TTV never raised in the District Court the issue of the validity or the amount of BLF's charging lien. Apart from an ambiguous assertion in one response, Former Attorneys never claimed that it was invalid, and though invited many times, they never offered or advanced a cogent legally cognizable basis to the court for invalidating it. Former Attorneys' consistent position was that the District Court had already determined the attorneys' recovery of their fees from TTV in the proceedings culminating in the August 15, 2023 Order finalizing the EAJA award to TTV.

So for over three years, in memoranda and at hearings, despite BLF's continued argument, the law concerning attorneys' charging liens was consistently sidetracked by Former Attorneys' appeals to the proceedings and result of the EAJA award. There are countless examples of this in the record, and Appellant has attempted to strike a balance between supply and brevity in choosing what to include here.

from the litigation that had ensued. The 2017 agreement expressly provided that a subsequent agreement would address "the distribution of . . . funds" should TTV, through BLF, have to "present and prove up attorney fees to the court." ECF No. 189-3 Preamble, ¶ 3.

In response, Former Attorneys denied that the 2017 agreement superseded the 2013 agreement and argued that if it did, the 2017 agreement could itself be construed to effect a valid charging lien. ECF No. 194-3.

On December 8, 2020, in reply, TTV argued that as a matter of law, the 2017 agreement was the governing agreement and lacked requisite material terms as to the distribution of funds from a judgment. ECF No. 199 at 4-6. TTV also pointed out that Former Attorneys' charging lien was inequitable because, as established by PILF records provided to BLF in June 2017, it had raised some $1.2 million to a "Litigation Fund" for the benefit of TTV and another client litigating with the IRS, and reported that about 58% of those funds were applied to providing TTVs legal services in the case. ECF No. 199, 7.

Based on the report, contemporaneous time records, and then-available 990s, BLF calculated that the Former Attorneys had already received funds in an amount to more than two and half times the actual cost basis of the non-profit PILF's representation of TTV; allowing them to invade the EAJA fee award—and

calculated at prevailing market rates—would provide them with two- or three-fold windfall. ECF No. 199, 8-9.[11]

Between March 21 and March 23, 2023, all BLF attorneys filed withdrawals from representation of TTV, and BLF filed its notice of charging lien for $505,003.38, JA 16,[12] ECF Nos. 218-220, 223. There was no response to the notice from either TTV or Former Attorneys.

On June 16, 2023, BLF moved to enforce its charging lien. ECF No. 229. TTV filed no response. Former Attorneys filed a response on June 21, ECF No. 230, in which they disputed how much BLF was owed, asserting that the correct amounts were those in the table of attorneys' fees prepared and filed by TTV in response to the court's Order to advise the court as to the amount owed by the

[11]Former Attorneys filed motions in January and February 2021 asking to supplement briefing on the motion to quash to address a matter brought by a TTV donor that was filed and dismissed in a Texas federal court and later filed in a Texas state court. As TTV explained, the matter involved a donor to TTV that alleged he'd made a "conditional gift," and Former Attorneys offered no basis for finding the briefing would be helpful or promote the fair and efficient administration of justice in this case. ECF No. 203, ¶¶ 6,7.

[12]Because of a clerical error or upload failure, the complete billing records, cited in ¶ 12 of the notice, were filed by notice of errata on September 12. ECF Nos. 248-248-21.

Government to TTV.[13] That is, Former Attorneys assumed that the EAJA award to a plaintiff determined what was due to the attorneys seeking payment from the plaintiff for the work done that resulted in the award.[14]

BLF filed its reply supporting the enforcement of its charging lien on June 28, 2023, ECF No. 236, and requested a hearing on the motion. ECF No. 234. BLF pointed out that its charging lien had, without objection by TTV, established the fees and expenses owed to BLF, and pointed out that, likewise, it was Former Attorneys' charging lien—the validity of which was still being litigated—and not the EAJA proceedings that determined how much Former Attorneys were entitled to out of the EAJA award to TTV. BLF proposed that if Former Attorneys' charging lien was deemed valid, the proceeds of the EAJA award to TTV be divided between the firms in proportion to the amounts established as being owed to them by TTV. ECF No. 236, 3.

At the July 5, 2023 hearing, TTV, by its new attorney, took no position on

---

[13]As noted *supra*, the amounts for the award provided in the table were, by order of the court, consistent with the court's ruling in its Memorandum Opinion (ECF No. 184); that is, they incorporated all the cuts to which TTV objected in their October 2020 response.

[14] *See* ECF No. 230, 2 ("BLF is not entitled to the *share* they demand (emphasis added); *id.* the court should not "give BLF money earned by Former Attorneys . . . it is irrelevant that Plaintiff's unpaid legal bills are greater than BLF's *share of the fee award* (emphasis added)).

Former Attorney's lien, or "how the fees get split up between the two . . . firms," JA 20-21, and offered that it "want[ed] an equitable division in the fees." JA 20-21, JA 24.

BLF advised that TTV had previously objected to Former Attorneys' lien "for multiple reasons, one of which was that there was no legal entitlement . . . to them being paid any amount of attorneys' fees and that they did not have a valid lien." JA 26-27. *See supra* (TTV's motion to quash was based on legal and equitable arguments (ECF Nos. 189, 189-1-7, 190; ECF No. 199 at 4-6,7)).

Former Attorney PILF argued that the charging lien "remains valid," JA 21, suggesting that either the 2013 or the 2017 agreement would support the conclusion that TTV intended for them to recover their fees from the EAJA award, JA 22, and argued that "equity and justice . . . in addition to those written agreements, would be a basis to find that a lien should exist." JA 22.

Former Attorney Foley & Lardner, LLP argued, in effect, that the District Court's previous orders awarding fees pursuant to the EAJA governed the distribution of the fees, irrespective of charging liens. JA 23-24 (recounting the docket entries establishing the EAJA award and "respectfully request[ing] that the fees in that amount be paid to Foley & Lardner.").

When BLF disagreed with the proposition that the EAJA proceedings

supported Former Attorney's charging lien, the court questioned its standing to challenge Former Attorneys' "entitlements for attorneys' fees," JA 25. Mr. Bopp pointed out that it was assuming that the EAJA determined the question of a charging lien that led the court to question BLF's interest in the application of Former Attorneys' charging lien; Former Attorneys were "conflating [the] processing of the petition for attorneys' fees [under the EAJA]." JA 25. "The question of attorneys' liens has nothing to do with [the EAJA award] other than [its] creating the total award, which is 700 and something thousand dollars." JA 25-26. "The attorneys' liens involve the relationship between . . . [BLF] and [TTV] and our entitlement to fees under our fee agreement [with TTV] for the services we rendered. And . . . as to [Former Attorneys], their attorneys' lien involves whatever agreement or legal justification they have to collect . . . from [TTV]." JA 26.

BLF reiterated that TTV had not objected to its charging lien, which specified what was billed and claimed to be owed, JA 28, and argued that Former Attorneys' assertion of a charging lien failed because they did not specify the amount which the purported lien secured. JA 28. At the end of the hearing, Former Attorneys offered to provide a specific amount they were to be paid from the award. JA 32.

The court offered that it tended to agree that Former Attorneys had a valid charging lien. JA 30 ("I think that the 2013 agreement did in fact create a lien. And to the extent it was . . . modified by the 2017 agreement, I don't think that modification abolished the lien . . . .").

On August 15, 2023, the court entered an order finding that Former Attorneys did "have a valid charging lien on the attorneys' fees judgment and, thus, denied the Plaintiff's Motion to Quash . . . ." *True the Vote, Inc. v. IRS*, No. 13-734, 2023 U.S. Dist. LEXIS 170599, at *10. The court grounded its rationale in the hearing, and found that, although the 2017 agreement superseded the 2013 agreement, the 2017 agreement created a valid charging lien under D.C. law. *Id.* at 11-17.

The court also ordered Former Attorneys and BLF to file supplemental briefing addressing (1) the amount of attorneys' fees claimed to be subject to the respective charging liens; (2) the priority in distribution of funds in the event of competing attorneys' charging liens in the District of Columbia; and (3) the method of payment for distribution to the attorneys that the court concludes have a valid charging lien on the EAJA award. *Id.* at 18. The court set a hearing for

October 18, 2023[15] to "address the Former Attorneys' charging lien and [BLF's motion to enforce its charging lien.]" *Id.* at 18.

In its supplemental brief, BLF reiterated that neither TTV nor Former Attorneys disputed its charging lien and, to establish the amount due and the lien's priority, articulated the basis for its equitable charging lien under Indiana law as designated in the TTV agreement ECF No. 247, 3. BLF argued that since BLF's lien was established by an agreement executed in February 2017, its charging lien had priority, and that because an attorney charging lien establishes the attorney as an equitable assignee of judgment, the payment of the funds should be made to the attorneys. ECF No. 247, 4-5.

In their supplemental brief, filed on September 11, 2023 (ECF No. 246), Former Attorneys claimed their charging lien had priority as the "only lien the Court has deemed valid," and that it had "seamlessly existed since 2013, ECF No. 246, 5, and claimed their "portion of the fee award" to be "at least $638,520.32," based on the history of the court's EAJA award rulings, ECF No. 246, 1-3.

On September 25, 2023 Former Attorneys filed an unscheduled response to

---

[15]The hearing was vacated on October 13, 2023 pending the resolution of The Government's appeal, filed on October 11.

BLF's supplemental brief,[16] devoting two sentences and a short footnote to claiming that the validity of BLF's lien turned on D.C. law and/or that Indiana lien law did not apply "to a fee award pursuant to the [EAJA]," ECF No. 249-2, 6, n.3, and insisted that the EAJA proceedings and award determined the amount of fees owed to both Former Attorneys and BLF, ECF No. 249-2, 3-4.

BLF opposed Former Attorneys' unscheduled response altogether as another brief "laden with more redundant, misplaced, and futile arguments." ECF No. 250, 2. BLF pointed out nine instances in which the parties and attorneys had described their positions on liens, six of which instances regarded BLF's charging lien, and in none of this had TTV challenged the veracity or amount due under BLF's charging lien. ECF No. 250, 2-3. The latest filing raised no issue of the validity of BLF's charging lien and again stridently argued that the process of determining the EAJA award to TTV as determining the treatment of attorney's charging liens on the award. ECF No. 250, 3.

On October 10, ECF No. 251-2, BLF offered a substantive reply to Former Attorneys's unscheduled response. (ECF No. 249-2). BLF rebutted the faint

[16]On July 26, 2024, the court granted leave to file Former Attorneys' unscheduled response and the related response from BLF. ECF No. 269. Former Attorneys re-filed the unscheduled response ECF No. 249-2 as ECF No. 270, and BLF re-filed its related response as 271.

assertion that D.C. law applied to BLF's lien,[17] ECF No. 251-2, 5-6, and explained the difference between the working of attorney's charging liens and the determination of an EAJA award, ECF No. 251-2, 3.

On October 11, the Government appealed the EAJA award, and on October 13, 2023, pending the resolution of appeal, the District Court vacated the scheduled October 18 hearing.

The appeal was voluntarily dismissed on February 16, 2024, and the EAJA award was paid into the Clerk's registry on March 26.

On March 27, 2024, Former Attorneys moved for distribution "of the fees awarded . . . on August 15, 2023." ECF No. 260. Relying on the arguments in the unscheduled response, ECF No. 249-2, the motion asserted the funds due Former Attorneys as they'd calculated them in their supplemental brief, ECF No. 246; that is, as based on the history and result of the court's EAJA award rulings.

On April 8, 2024, BLF, asserting its charging lien, moved the court to distribute $505,003.38 from the funds deposited with the Court's Clerk. BLF concurrently filed a motion to set a hearing on pending motions, including its motion for enforcement of its charging lien. ECF Nos. 262, 263.

[17] Former Attorneys had simply asserted that federal courts apply the forum state's law without mentioning the existence or enforceability of the underlying agreement's express choice of law provision.

On the same date, BLF filed an opposition to Former Attorneys' motion for distribution, arguing that the pending motions and issues on charging liens made a distribution premature. BLF argued that Former Attorneys continued to conflate deciding what the Government owed TTV under the EAJA with the issue of the charging liens, which controlled the distribution of TTV's EAJA award to BLF and Former Attorneys. ECF No. 264, 1-2.

BLF pointed out that the court's ordering supplemental briefing on the charging liens after it had awarded TTV $788,539.30 from the Government on August 15, 2023 (ECF No. 245)[18]—indicated that no "law of the case" governs how TTV's award should be distributed to the firms, ECF No. 264, 3-4, which required resolving all remaining legal issues regarding the charging liens. ECF No. 264, 4.

BLF argued that it had noticed a charging lien valid under Indiana law that applied via the explicit choice of law provision in its fee agreement with TTV; that the amount of the lien was based on billing records provided with the notice; that BLF's charging lien takes priority over Former Attorneys' because the agreement underlying it antedates theirs and; that BLF is the assignee of funds in the EAJA

---

[18]The Order is also available at *True the Vote, Inc. v. IRS*, No. 13-734, 2023 U.S. Dist. LEXIS 170599 (D.D.C. Aug. 15, 2023).

award, meaning the distribution should be paid by the Court Clerk to BLF. ECF No. 264, 4-6.

In response, Former Attorneys cited orders entered in determining the amount of the EAJA award to TTV as deciding the amount of attorney's fees owed under the charging liens, ECF No. 265, 3, and insisted that the court had agreed that the 2013 agreement still formed the basis of its charging lien. ECF No. 265, 3-4. Former Attorneys suggested that BLF had not been candid with the court regarding the litigation in federal court in Indiana in which BLF sought attorney's fees from TTV, including the attorney's fees at issue here. ECF No. 265, 2.

In reply, BLF reiterated that the court could not make a distribution because it had not yet resolved the pertinent legal issues—the application and operation of the charging liens. ECF No. 266, 2-3. BLF explained that it had consistently informed the court that any amount recovered in its suit with TTV would offset the amount recovered from TTV's EAJA judgment (and vice versa), and challenged Former Attorneys' relying on the court's observation in a hearing, rather than its order, to support their argument that their charging lien was based on the 2013 agreement. ECF No. 266, 4-5.

On July 26, 2024, the court set a hearing on the pending motions for August

23, 2024.[19]

At the hearing, the court advised that it thought that the choice of law provision in the BLF fee agreement applied but that Indiana law and D.C. law on charging liens were similar. JA 33-34. In response, BLF pointed out, again, that the question of BLF's charging lien was raised on March 21, 2023, that neither TTV nor Former Attorneys had raised any issue about the lien's validity, JA 34-35, and that the only briefing before the court about the Indiana law on charging liens was BLF's briefing. JA 35. BLF asserted that the question of the validity of BLF's charging lien had, therefore, been waived. JA 35.

In response to this, Former Attorney Foley & Lardner argued that the issue was not whether BLF had a charging lien but that the amount to be distributed to BLF was "consistent with the agreement among all of the parties and their counsel, including [TTV], the former attorneys, and [BLF] itself." JA 36. Former Attorney took issue with the amount of BLF's lien, $505,003.38, as not what was submitted in the EAJA proceedings, included amounts not submitted or rejected in the EAJA proceedings, and those fees were before a court in Indiana. JA 36-37.

---

[19]On the same date, the court granted leave to file Former Attorneys' unscheduled response and the related response from BLF to its August 15, 2023 Order. ECF No. 269. Former Attorneys re-filed the unscheduled response (ECF No. 249-2) as ECF No. 270, and BLF re-filed its related response (ECF No. 251-2) as ECF No. 271.

The conclusion was that BLF was judicially estopped from any fees under its charging lien by the result in the EAJA proceedings. JA 36; JA 37 (BLF was "trying to rewrite the charging lien . . . to include fees that were never intended to be covered").

When asked by the court about the litigation in Indiana, BLF explained that it brought suit for unpaid invoices and included "$505,000 that . . . [BLF] asserts is owed by [TTV]" and is the amount of BLF's charging lien. JA 38. "[O]f course, as we repeatedly say," BLF explained, any payment from the EAJA award to BLF would be credited against the amount claimed in the suit. JA 38. BLF confirmed, again, when the court asked, that the fees at issue in Indiana were the same funds claimed in the charging lien and reiterated that any distribution under the charging lien would be credited against any amount due in the litigation. JA 38-39.

Noting that there seemed to be no challenge to the validity of BLF's charging lien "in reference to litigation here in Washington," the District Court asked why "the $100,000 amount is not appropriate to award, compared to the $500,000 amount that's been mentioned." JA 39. Mr. Bopp explained that the $150,000 came from the EAJA proceedings in which "the [statutory] attorney's

fee rates for reimbursement is $150 an hour . . . ." JA 40.[20] The EAJA proceedings, he argued, had nothing to do with the enforcement of an attorney's lien. JA 42 ("The question of an attorney's lien has nothing to do with how the pot of money that is now subject to the lien has been—has arisen."). The source of "the pot of money" to which TTV is entitled, BLF explained, "is irrelevant to the agreement between [TTV] and [BLF] on what they, [TTV], owe [BLF] [which is] . . . governed by the . . . attorney fee agreement between [TTV] and [BLF]." JA 42.

Mr. Bopp explained that the invoices showed the amount claimed under the charging lien, which, he pointed out, "has never been contested." JA 43 ("no motion to quash the lien"— "nothing in the former attorney's supplemental filing with the Court about this."). As he noted, "it's not unusual . . . where that full reimbursement to the plaintiff is not achieved in terms of what the plaintiff has agreed to pay [its lawyers]. They still are obligated to pay that amount, and customarily do. So this is not an unusual situation." JA 44.

---

[20]But "[TTV] was entitled to market rates . . . [because] [t]his Court found that . . . the IRS had operated in bad faith"; and in this case the much higher market rates applied mostly to work performed by Former Attorneys. JA 39-41. For this reason, BLF pointed out, the work performed by the two sets of attorneys was more similar than the amounts calculated in the EAJA proceedings suggested. JA 41.

Former Attorney Foley & Lardner argued that "fundamental fairness determines the award of attorney's fees. . . . And . . . [BLF] is . . . trying to . . . take money away from the former attorneys for the more challenging work and take it for itself. . . . Not only is it unfair, but it is procedurally wrong; it's forum shopping." JA 44-45. Mr. Lockerby submitted that "[BLF] ought to be held to the amount that everyone agreed at the time was the amount . . . that should be paid to [BLF], $150,000." JA 46.

When asked by the court if there was any reason to defer ruling to await what happens in the case in Indiana, JA 46-47, Mr. Lockerby suggested that the court could distribute to Former Attorneys what they claimed and hold the remaining funds from the EAJA award in escrow. JA 47.

When asked to respond, BLF questioned Former Attorneys' right to raise the issue, JA 48, arguing that if TTV, a party in the litigation, "had any reason or interest in preventing [BLF] from collecting its fees under its retainer agreement from these proceeds, they would be here." JA 47-48. TTV "has not objected in any way, at any time, to the lien, to the validity of the lien, to the retainer agreement, to the amount that we have asserted as the amount of the lien in this case." JA 48. Mr. Bopp argued that "[i]f anything that the former attorneys just said had any validity or justification or effect on [TTV], then it's for them to assert, not the

former attorneys." JA 48.

BLF pointed out that it had not agreed with TTV to be paid the rates provided in the EAJA, and had not agreed to the amount calculated under the EAJA. JA 48-49. It was the court's obligation to resolve the question of the lien, to which TTV had made no objection, by paying BLF from the award. JA 49.

Former Attorney Foley & Lardner asserted that their lien "has priority over [BLF's] charging lien," and that all the issues "related to the amount that [BLF] is seeking are properly before the court in Indiana . . . and the court ought not resolve those." JA 49.

BLF concluded by saying that the court had ruled that Former Attorneys' 2017 agreement was the basis of its charging lien, that BLF was first in time and had priority, and that the checks from the court should be made directly to the attorneys. JA 50-51.

When the court asked Former Attorneys whether they agreed "that [BLF] does in fact have a valid charging lien," JA 52, Mr. Lockerby responded "[w]e don't contest the charging lien with respect to the 150,000," JA 52. But, he added, "[BLF] does not have priority. . . ." because "the provisions of the March 2013 agreement . . . were unchanged at all by the 2017 agreement." JA 52.

On September 11, 2024, the court denied without prejudice BLF's motion to

enforce its charging lien, and ordered BLF and Former Attorneys to brief whether the forum selection clause in BLF's fee agreement with TTV was binding on the court and if it required the court to certify to an Indiana court the question of whether BLF had established a valid charging lien. ECF No. 272.

On October 1, BLF filed a response, including an amended motion to enforce its charging lien, arguing that the parties to the agreement had waived the right to invoke the forum selection clause and federal rules left the case with the District Court that had sole jurisdiction over the underlying case and the funds at issue. ECF No. 274-1, 1-10. BLF argued that Indiana rules advised against certification because the question was not case determinative and there was ample Indiana precedent on it. ECF No. 274-1, 11-12.

Former Attorneys agreed that the District Court was the proper forum to resolve the question of the charging liens because, they argued, "under no circumstances . . . will BLF be entitled to assert a lien against the attorneys' fees previously awarded by this Court." ECF No. 275, 1. Former Attorneys argued that the validity of BLF's charging lien depended on the result of the litigation in Indiana, but that "[r]egardless of what happens in the litigation that BLF filed, BLF will have no valid lien on the fee award in this case." ECF No. 275, 2.

BLF replied on October 15, 2024, ECF No. 276, noting that Former

Attorneys had “concur[red] this is the proper forum” to resolve the dispute over charging liens, ECF No. 276, 2. BLF pointed out that TTV had not opposed the charging lien or challenged the validity or enforceability of the BLF agreement here, repeated the interplay of the suit in Indiana with this case, and pointed out that Former Attorneys asked the court “to determine, based upon allegations made in another jurisdiction, that BLF has ‘no valid lien on the fee award in this case.’” ECF No. 276, 4.

On May 6, 2025, Former Attorneys moved for supplemental briefing and a hearing, ECF No. 278, suggesting that the Indiana suit’s having been resolved on March 26, 2025 meant that BLF’s claims here “are now barred by res judicata” ECF No. 278, ¶ 11.

BLF responded on May 20, 2025, pointing out that it was Former Attorneys’ belief that the Indiana suit must decide the merits of BLF’s claim here that lead them to assume that the order on a Stipulated Dismissal had any effect here. ECF No. 279, 3. BLF contemporaneously filed a notice and assignment by TTV of its interest in the EAJA award to BLF. ECF Nos. 279-1, 279-2.

On May 30, the District Court filed its Order and opinion denying BLF’s extant motion to enforce its charging lien.

## Summary of the Argument

The control and distribution of the EAJA award is an exercise of inherent power, which is exercised with restraint to effect orderly and expeditious disposition of matters before the court. The District Court erred by not disposing of the matter of BLF's charging lien after TTV and Former Attorneys repeatedly failed to advance a cognizable reason to invalidate it. The District Court also failed to exercise its inherent power with restraint when it adjudicated BLF's charging lien on the basis of substantive legal arguments that were never made, prompted, or even suggested by TTV or by Former Attorneys.

The District Court erred in finding that BLF did not have an equitable charging lien under Indiana law. The seminal Indiana Supreme Court holding on equitable charging liens provides that such a lien is formed if either the fund to be subject to the lien has been secured through the efforts of the attorney or if the attorney's compensation was expressly or implicitly charged against the fund. The District Court read other cases, including cases from the Indiana Court of Appeals, to modify the rule to read to require both conditions. The cases cannot be read to reach that result.

## Argument

### I. Standard of Review

This Court reviews the District Court's findings of fact for clear error. The District Court's examination of BLF's attorney's charging lien was an exercise of inherent power that is reviewed for abuse of discretion. *Shepherd v. ABC*, 62 F.3d 1469, 1475 (D.C. Cir. 1995). The Court reviews *de novo* the District Court's decision that as a matter of law, BLF's lien was invalid. *Salve Regina Coll. v. Russell*, 499 U.S. 225, 231 (1991); *Cellwave Tel. Servs. L.P. v. FCC*, 30 F.3d 1533, 1537 (D.C. Cir. 1994).

### II. The District Court Abused its Discretion in its Consideration of the Validity of BLF's Lien

The District Court abused its discretion when it did not dispose of the matter of BLF's charging lien after TTV and Former Attorneys repeatedly failed to advance a cognizable legal reason to invalidate it. Despite extended and repetitive briefing, hearings and arguments, including direct questioning by the District Court, neither TTV nor Former Attorneys offered or advanced any cogent or viable claim or legally cognizable argument that BLF's charging lien was invalid as a matter of law. The District Court further abused its discretion when it acted

"without prompting or suggestion"[21] to frame and apply the legal basis it relied on to rule that BLF's charging lien was invalid.

**A. The discretion afforded equitable remedies is not the applicable standard.**

The court justified its sua sponte analysis of BLF's lien by citing cases recognizing that an equitable charging lien is a remedy that lies within the court's discretion. JA 60-61; *True the Vote, Inc. v. IRS*, No. 13-734, 2025 U.S. Dist. LEXIS 103491, at *10-11 (D.D.C. May 30, 2025). But upon a closer reading, where not simply reciting a general maxim about equitable relief, those cases address the discretion of a court to decide what constitutes a proper case in which to enforce an equitable charging lien.[22] Indeed, the factors in making that decision

[21]"Sua sponte," Black's Law Dictionary, 7th Ed. 1437.

[22]*Petroleum Expl., Inc. v. Pub. Serv. Com.*, 304 U.S. 209, 218 (1938) addressed "injunctive relief to restrain the Commission from further prosecuting the "investigation" into the price of gas sold under appellants contracts to the distributing agencies." In *SFR Invs. Pool 1, LLC v. NewRez LLC*, No. 2:22-cv-195, 2022 U.S. Dist. LEXIS 208593 (D. Nev. Nov. 17, 2022), a dispute regarding the foreclosure sale of real estate, the court denied an equitable lien against the property at issue, because it had been submitted as a counterclaim. In *Moran v. Ruan Logistics Corp.*, 652 F.Supp. 3d 921, 928 (S.D. Ohio 2023), the court framed the issue as between an attorney and its former client: "Whether named as a claim for quantum meruit or a request for a charging lien, the Court is tasked with the same question: under equity principles, is Hondorf entitled to some amount of fees for services rendered during the First Action?" In *Joffe v. King & Spalding LLP*, 337 F. Supp. 3d 366 (S.D.N.Y. 2018), the decision whether to apply New York's statutory attorney's lien turned on whether, as the statute provided, the attorney withdrew with "good cause." The Court in *Langnes v. Green*, 282 U.S. 531, 540-

make it clear that the discretion they speak of is in deciding whether to apply an equitable lien per se, and the cases are not considering the particular question here, whether a court can decide whether a charging lien against funds it holds for distribution is legally valid when no party in interest has offered or advanced a legally cognizable argument that it is not.[23]

In addition, at bottom, the equitable concern with an attorney's charging lien is whether it is fair between the client and the attorney. *See Sutton v. N.Y.C. Transit Auth.*, 462 F.3d 157, 161 (2d Cir. 2006) ("There is nothing "fair" about requiring a pro se litigant to be subjected to a charging lien . . . in favor of the former law firm that urged her to accept a settlement that would have netted it nothing under its retainer agreement."). Here, TTV has never opposed the

---

41 (1931) addressed whether, as a matter of discretion, federal jurisdiction should be exercised "to dispose of [a] cause" in which claims had also been brought in state court.

[23] *See, e.g.*, *Ohio Willow Wood Co. v. ALPS S., LLC*, No. 2:04-cv-1223, 2019 U.S. Dist. LEXIS 103589, at *6 (S.D. Ohio June 20, 2019), cited by the *Moran* court as the source of Ohio's treatment of attorney charging liens.

The factors recognized by the Southern District of Ohio were (1) the client's right to be heard on the merits; (2) the right of an attorney to invoke the equitable jurisdiction of the courts to protect his fee for services rendered; (3) the elimination of unnecessary and duplicative litigation; (4) the opportunity for the client to obtain counsel to litigate the claim for attorney fees; (5) the propriety of an order as opposed to a judgment; (6) a forum for the presentation of witnesses, if necessary; and (7) the equitable nature of the proceeding.

charging lien and has instead assigned its interest in the EAJA award to BLF. Review should focus on the error that the District Court is said to have made, not on general propositions of law or issues that the court did not decide.

**B. The court was exercising inherent power.**

The issues on appeal here proceed from the District Court's "distribution of judgment proceeds"—here, an EAJA award. *Martens v. Hadley Mem'l Hosp.*, 753 F. Supp. 371, 373 (D.D.C. 1990). A court's holding and distribution of judgment proceeds is effectively establishing and governing a common fund. The Supreme Court has described the use of a common fund, which "allows a court to award attorney's fees to a party whose litigation efforts directly benefit others," as an exercise of "inherent power" deriving from a court's historic equity jurisdiction. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991). *See also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 257-58 (1975) (the "historical power of equity" permits "a party preserving or recovering a fund for the benefit of others in addition to himself, to recover his costs, including his attorneys fees, from the fund or property itself or directly from the other parties enjoying the benefit"); *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 164 (1939) (allowance of "counsel fees and other expenses entailed by the litigation . . . in appropriate situations is part of the historic equity jurisdiction of the federal courts").

This Circuit recognizes that a court's inherent power includes power to impose attorney's fees, *Shepherd v. ABC*, 62 F.3d 1469, 1475 (D.C. Cir. 1995), and, as with a common fund, to hold and distribute the proceeds of judgments, including those subject to attorney's liens. *Democratic Cent. Comm. v. Wash. Metro. Area Transit Comm'n*, 941 F.2d 1217, 1219 (D.C. Cir. 1991) (finding jurisdiction over the question of attorney's charging lien in "the court's inherent equitable powers to enforce its own order granting attorney's fees, and the common fund or benefit exception to the American Rule"); *Cont'l Cas. Co. v. Kelly*, 106 F.2d 841, 843-44 (D.C. Cir. 1939) ("the court having possession of the res or its equivalent ought to be clothed with jurisdiction, upon proper application, to establish the lien and disburse the fund").[24]

In sum, the District Court's jurisdiction over the attorney's charging lien dispute is "premised upon [its] inherent power to affect the distribution of

---

[24]*See also Peterson v. Islamic Republic of Iran*, 724 F. App'x 1, 4 (D.C. Cir. 2018) (per curiam) ("[b]y claiming an implied lien, the attorney invokes the power of the court to preserve the judgment pending payment of the contracted–for charges"); *Peterson v. Islamic Republic of Iran*, 220 F. Supp. 3d 98, 106 (D.D.C. 2016) ("The D.C. Circuit has also recognized a 'continuing jurisdictional basis premised upon this Court's inherent power to affect the distribution of judgment proceeds'"(quoting *Martens*, 753 F. Supp. at 373)); *Lyman v. Campbell*, 182 F.2d 700, 702 (D.C. Cir. 1950) (attorney charging lien is "'a claim to the equitable interference by the court to have that judgment held as security for his debt (the attorney's charges against the client)'" (citation omitted)).

judgment proceeds," *Martens*, 753 F. Supp. at 373 (citing *Cont'l Cas. Co.*, 106 F.2d at 843, 44).

Review of "a district court's use of its inherent power [is] . . . for abuse of discretion . . . [but that] review is not perfunctory." *Shepherd*, 62 F.3d at 1475. "Because of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers v. NASCO*, Inc., 501 U.S. 32, 44 (1991). *See also Roadway Express v. Piper*, 447 U.S. 752, 764 (1980) ("Because inherent powers are shielded from direct democratic controls they must be exercised with restraint and discretion.").

"Because the overriding purpose of the inherent power is to achieve the orderly and expeditious disposition of cases, the use of this power should reflect our judicial system's strong presumption in favor of adjudications on the merits." *Shepherd*, 62 F.3d at 1475 (cleaned up). "On the merits" means "delivered after the court has heard and investigated the substantive arguments of the parties." Black's Law Dictionary, 7th Ed. 1117. An orderly adjudication or disposition on the merits is one that is made after hearing and considering the substantive arguments of the parties, rather than, for example, entry of a default judgment. *Shepherd*, 62 F.3d at 1473.

On the other hand, in achieving the orderly and expeditious disposition of

cases, a federal court may, in its inherent power, "act *sua sponte* to dismiss a suit for failure to prosecute." *Chambers*, 501 U.S. at 44 (1991). *See also Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962) (recognizing courts' inherent power to clear out cases "remain[ing] dormant because of the inaction or dilatoriness of the parties seeking relief."). The District Court's use here of its inherent power stood each of these principles on its head.

**C. The District Court abused the discretion afforded the use of its inherent power.**

Adjudicating the matter of the charging liens required hearing the substantive arguments of the parties. And if and when, as here, a party does not take an opposing position or fails to offer a cogent and viable argument for an opposing position—effectively failing to prosecute—the orderly and expeditious disposition of the matter would dictate that the court rule expeditiously, and in accordance with the lack of or failure to advance a legally cognizable position—just as it does in dismissing a suit for failure to prosecute.

The District Court did not effect the orderly and expeditious disposition of the case here because it allowed the question of BLF's charging lien to continue to be litigated when it was clear that TTV, the party to whom the EAJA award belonged and the party against whom the lien was lodged, never objected to it, and

that Former Attorneys, whom the District Court found to have a valid lien and thereby an interest in the EAJA award, did not offer or advance a legally cognizable objection to BLF's charging lien. A fortiori, it was not a restrained use of its inherent power for the District Court to adjudicate BLF's charging lien on the basis of substantive legal arguments that were never made, prompted, or even suggested by TTV or by Former Attorneys.[25]

---

[25]Despite many opportunities, neither TTV nor Former Attorneys took or advanced the position that BLF's lien was invalid. BLF pointed out to the court nine instances in which the parties and attorneys had described their positions on liens, six of which instances regarded BLF's charging lien, and in none of these had either TTV or Former Attorneys challenged the veracity or amount due under BLF's charging lien. ECF No. 250, 2-3.

In an unscheduled brief filed in September 2023, ECF No. 249-2 (later filed, by leave of the court, as ECF No. 270) Former Attorneys devoted two sentences and a short footnote to claiming that the validity of BLF's lien turned on D.C. law and/or that Indiana lien law did not apply "to a fee award pursuant to the [EAJA]," ECF No. 249-2, 6, n.3, As BLF pointed out, Former Attorneys had simply asserted that federal courts apply the forum state's law without mentioning the existence or enforceability of the underlying agreement's express choice of law provision. ECF No. 251-2, 5-6 (BLF's response was later re-filed, by leave of the court, as ECF No. 271).

On April 8, 2024, BLF, asserting its charging lien, moved the court to distribute the amount specified in its charging lien from the funds deposited with the Court's Clerk. On the same date, BLF filed an opposition to Former Attorneys' motion for distribution, in which it pointed out that it had noticed a charging lien valid under Indiana law that applied via the explicit choice of law provision in its fee agreement with TTV. ECF No. 264, 4-6. In response, Former Attorneys pointed to the case in federal court in Indiana in which BLF sought attorney's fees from TTV, including the attorney's fees at issue here, arguing that the case put at issue the fees at issue here. ECF No. 265, 2.

On September 11, 2024, the District Court ordered BLF and Former

Indeed, the District Court's Order says nothing about TTV's position and struggles to point to when Former Attorneys even claimed that BLF's charging lien was invalid. The court provided two examples and a counterexample.

The court cites "Former Attorneys' Opp'n" [ECF No. 275] at 2-3. JA 60; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *9-10. The two pages cited made no cogent legal argument regarding the validity of BLF's lien. There, as noted *supra*, Former Attorneys argued that BLF's charging lien depended on the result of the litigation in Indiana, but asserted that any such lien would not attach to the EAJA award. ECF No. 275, 2-3.

The second cite is to "Former Attorneys' Resp." [ECF No. 246] at 6," *id.* at *11. There, as the court quotes, Former Attorneys argued that "[t]he Court has spoken to the validity of only one charging lien—that of the Former Attorneys," *id*. at *11 (cleaned up). If this is an argument on the validity of BLF's charging

---

Attorneys to brief whether the forum selection clause in BLF's fee agreement with TTV was binding on the court and if it required the court to certify to an Indiana court the question of whether BLF had established a valid charging lien. In their response, Former Attorneys agreed that the District Court was the proper forum to resolve the question of the charging liens, ECF No. 275, and the validity of BLF's charging lien depended on the result of the litigation in Indiana, but that any such lien would not attach to the EAJA award. ECF No. 275, 2.

As the court noted, *infra*, when asked, point blank, whether BLF had a valid charging lien under Indiana law, Mr. Lockerby responded "[w]e don't contest the charging lien with respect to the 150,000," JA 52.

lien, it is argument by omission. BLF's response, filed the same day in September 2023, reiterated that neither TTV nor Former Attorneys had disputed its charging lien, and provided the basis of its equitable charging lien under Indiana law. ECF No. 247, 3. Former Attorneys never joined issue with this, even when invited to.

But as the court pointed out, at its August 23, 2024 motion hearing, "[Former Attorneys] . . . represented to the Court . . . that they did not oppose the BLF's lien, but argued instead that their lien has priority over any BLF lien." *Id.* at *11-12. In context, Former Attorneys' "representation" was the latest concession that they had no legally cognizable argument that BLF's lien was invalid.

As noted *supra*, at that hearing, when the court raised the question of the legal validity of BLF's lien, BLF pointed out, again, that the question of BLF's charging lien was raised on March 21, 2023, that neither TTV nor Former Attorneys had raised any issue about the lien's validity, JA 34-35, and that the only briefing before the court about the Indiana law on charging liens was BLF's briefing. JA 35. BLF asserted that the question of the validity of BLF's charging lien had, therefore, been waived. JA 35. Moments later, the court asked Former Attorneys whether they agreed "that [BLF] does in fact have a valid charging lien," JA 52, and Mr. Lockerby responded "[w]e don't contest the charging lien with respect to the 150,000," JA 52.

Even when prodded, in the context of an argument in which BLF had asserted that arguments about the legal validity of its charging lien had been waived, Former Attorneys failed to make, prompt, or suggest a substantive legal argument attacking the validity of BLF’s charging lien. Instead, as they had done repeatedly and consistently, they argued that the EAJA proceedings had decided the question of BLF’s charging lien. A restrained exercise of inherent power would dictate that the court rule in accordance with the failure to offer or advance a legally cognizable position—just as it does in dismissing a suit for failure to prosecute. Instead, the District Court adjudicated the issue before it—not by considering the substantive arguments of the parties—but, acting without prompting or suggestion by a party, it supplied and applied the very legal arguments that the parties in interest stubbornly refused to supply. The District Court turned on their head the principles governing a court’s use of inherent power. This was an abuse of discretion.

**III. The District Court erred in finding BLF did not have an equitable charging lien under Indiana law.**

The District Court agreed that, as BLF had asserted, *see, e.g.*, ECF Nos. 247, 251-2, 274-1, Indiana law applies in assessing BLF's charging lien. JA 63-65; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *13-17. The District Court then analyzed Indiana law to assess whether BLF's charging lien is valid. This Court reviews the District Court's application of Indiana law de novo. "When de novo review is compelled, no form of appellate deference is acceptable." *Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991).

The District Court ruled that BLF did not have a valid charging lien against the EAJA award because neither the terms of its agreement with TTV nor the surrounding circumstances indicated that BLF's fees were to be paid out from the fund. JA 68; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *21. The District so concluded because it reviewed and concluded that Indiana law conditions an attorney's equitable charging lien on this condition. It does not.

After sidestepping the opinion of an Indiana federal court finding an equitable attorney's lien in nearly identical circumstances,[26] the District Court acknowledged that the seminal equitable lien case in Indiana, *Koons v. Beach*, 46

---

[26] *Browne v. Waldo*, No. 2:20-CV-196-JVB-APR, 2023 WL 2482847, at *1 (N.D. Ind. Feb. 23, 2023).

N.E. 587, 587 (1897), provides as alternatives what D.C. law considers elements of an equitable lien. JA 67; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *19. That is, *Koons* unambiguously provides that, in Indiana, an attorney charging lien will attach to a fund if either the fund was secured by the attorney's efforts or the compensation of the attorney was expressly or implicitly charged against the fund. The language could hardly be clearer:

> One test of this claim, as originally shown, is this: Was the fund secured by the client through the efforts of the attorney. And another is: Was the compensation of the attorney expressly or by implication such a charge against the fund as to amount to an assignment of some part thereof. In either event equity will aid the attorney in the enforcement of his claim, ordinarily called a lien.

*Koons*, 46 N.E. 587, 587 (Ind. 1897). The context underscores the plain reading of the tests as alternatives. The tests were in response to the following question:

> When, therefore, equity is appealed to, the inquiry is not necessarily, did the attorney procure a judgment? but it is, does he present a claim where the law supplies no remedy as efficient, and where in good conscience the client should not be permitted to defeat the attorney of his just compensation?

*Koons*, 46 N.E. at 587. The tests are for determining when, in the situation where a client could "defeat the attorney of his just compensation," an attorney can secure the equitable remedy[27] of a lien. The answer is twofold: "[when] the fund [is]

[27]"Equitable" is the ordinary term for "when the law supplies no remedy as efficient." *See* Black's Law Dictionary (7th Ed.) 1297 ("equitable remedy.")

secured by the client through the efforts of the attorney. *And another is*: [when] the compensation of the attorney expressly or by implication [is] such a charge against the fund as to amount to an assignment of some part thereof." *Id.* (emphasis added). Both the language and the reasoning, in context, can only support the conclusion that the tests are alternatives.

The authorities cited in *Koons*, presumably supplying the rationale, also present both tests: "In *Irving v. Viana*, 2 Young & Jerv. 70, it was held that an attorney, although not retained in the case to the end, *was entitled to a lien on the fund which his exertions had aided in producing*." *Koons*, 46 N.E. at 587 (emphasis added).[28] In the alternative,

> [I]n Wylie v. Coxe, 56 U.S. 415, 15 HOW 415, 14 L. Ed. 753, it was held that equity would enforce a lien in favor of an attorney who had partially prosecuted a claim . . . before a commission created by an act of congress, but before it was concluded his client had died and an administrator . . . employed another who recovered the money and it had been paid into the hands of the administrator. *There, as here, there was an agreement upon a designated sum to be paid from the amount recovered*.

[28]Older cases, though not considering both tests in the same opinion, do similarly describe an equitable attorney's lien as arising "'upon a fund recovered by his aid,'" because "'the services of the solicitor have, in a certain sense, created the fund, and he ought in good conscience to be protected,'" and recognized that "'attorney was "undoubtedly entitled" to compensation for his services out of the fund . . . [produced by the attention and services of the attorney]'" *Justice v. Justice*, 16 N.E. 615, 618 (1888) (citations omitted).

*Koons*, 46 N.E. at 587 (emphasis added). The *Koons* opinion is providing both bases, as alternatives, for an attorney's charging lien. The language, the context, the internal authority included in *Koons*, as well as other decisions from the era, all militate concluding that the rule in Indiana is that there are two alternative bases for an attorney's charging lien. Notwithstanding the District Court's reasoning, there is no precedential or persuasive authority for finding that in Indiana, the alternative tests announced in *Koons* have become elements of a single test.

In concluding that Indiana's is currently a "two-prong test," the District Court relied on dicta in a later Indiana Court of Appeals case. JA 67-68; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *20. First, courts of appeal in Indiana "are obliged to follow precedents established by the Indiana Supreme Court." *Patton v. State*, 507 N.E.2d 624, 626 (Ind. Ct. App. 1987). When a precedent has been established by the Supreme Court, it is not within a court of appeals' prerogative to disregard it, *id.*, and "it is not in the province of [a court of appeals] to address" modification of a precedent. *Id.* So if it did alter the *Koons* test, a lower court's holding is not authoritative. But there is no reason to read the opinions the District Court cites as modifying *Koons*'s rule of alternative tests.

In *Hammond, W. & E. C. R. Co. v. Kaput*, in describing the rule, the court

uses the word "and" and finishes the description by quoting the *Koons* "conclusion clause"—"'equity will aid the attorney in the enforcement of his claim, ordinarily called a lien.'" 110 N.E. 109, 111 (Ind. Ct. App. 1915) (citation omitted). *Hammond* is not offering a restatement of the *Koons* rule. There was no need for the court there to describe the rule precisely, as "appellant admits that appellee's attorneys have a lien on the judgment from which the appeal is taken." *Id.* And, on its face, there is no need to read *Hammond*'s statement to conflict with *Koons*. As the use of quotation marks militates, the court was saying that in a situation where both alternatives were covered, the *Koons* rule provides for a charging lien.

The District Court cited a case older than *Koons*, in which the Indiana Supreme Court, without analysis or stating a rule, affirmed a lower court's judgment that found both alternative bases for a lien. *Blankenbaker v. Bank of Commerce*, 85 Ind. 459, 462 (1882). JA 68; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *20. Aside from the fact that *Koons*'s explicit holding came later in time, *Blankenbaker* is addressing only one of the two alternatives and so can't demonstrate that both alternatives are needed. In fact, *Blankenbaker* was cited in an 1896 *Koons* decision, *Koons v. Beach*, 147 Ind. 137, 45 N.E. 601, 603 (Ind. 1896), ruling that an equitable lien did attach in the situation where an attorney's compensation was expressly or implicitly to be paid from a fund

resulting from his efforts. Again, when only one of the alternatives is at issue, the court discussed only that alternative. Conversely, in the second *Koons* decision, *Koons v. Beach*, 46 N.E. 587, 587 (Ind. 1897), in which the court needed to distinguish between an attorney's retaining lien and an equitable lien—that is, when the court needed to provide the rule for equitable attorney's liens—the court provided the two tests, as alternatives. And that remains the rule for equitable attorney's liens.

In a footnote, the District Court cited a case in which an appellate court denied a lien under the first *Koons* alternative without mentioning the second, and the second alternative, the court implies, would have provided for a lien. JA 68 n.5; *True the Vote, Inc.*, 2025 U.S. Dist. LEXIS 103491, at *20 n.5 (citing *Alden v. White*, 68 N.E. 913, 915 (Ct. App. 1903)) But, again, if only the first alternative was at issue, there is no need for the court to address the second. The court in *Alden* observed that the attorney seeking the lien claimed that "it was through his services, rendered under the employment, that the fund was created which he asks the court to impress with the lien." *Alden*, 68 N.E. at 915. That claim failed because the attorney had not, in fact, rendered services resulting in the fund against which he sought a lien. The funds at issue had passed to others, so whether a lien could attach would require an agreement, the situation covered by the

second *Koons* alternative. The court says only that the attorney "does not state facts which create a liability of any kind" against the funds. *Id.* In short, the attorney never raised the second *Koons* alternative claim and so the court did not address it. Even if it could modify it, *Alden* would cast no shadow on *Koons*.

The District Court provides no precedential or even persuasive authority for holding that the law on Indiana attorney's charging liens does not provide for one where, as here, "the fund [was] secured by the client through the efforts of the attorney." The agreement with TTV establishes that the efforts, recorded in intricate detail in the billing records, were expended by BLF in securing the EAJA award. The District Court's denial of BLF's charging lien must be overturned.

## Conclusion

BLF requests reversal and for this Court to enter an order for the Clerk of the Court of the United States District Court for the District of Columbia to distribute the funds pursuant to BLF's charging lien.

December 16, 2025

Respectfully submitted,

/s/ Jeffrey P. Gallant

James Bopp, Jr., Ind. Bar No. 2838-84
Jeffrey P. Gallant, Va. Bar No. 46876
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
jgallant@bopplaw.com
*Attorneys for Appellant*

**Certificate of Compliance with Type-Volume Limitation, Typeface Requirements, and Type Style Requirements**

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B)(i) because this brief contains 11,359 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R.App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using WordPerfect 2021 in 14 point Times New Roman font.

December 16, 2025

/s/ Jeffrey P. Gallant

James Bopp, Jr., Ind. Bar No. 2838-84
Jeffrey P. Gallant, Va. Bar No. 46876
THE BOPP LAW FIRM, PC
The National Building
1 South 6th Street
Terre Haute, Indiana 47807
Telephone: (812) 232-2434
Facsimile: (812) 235-3685
jboppjr@aol.com
jgallant@bopplaw.com
*Attorneys for Appellant*

# Addendum

28 US.C. § 2412

**28 USCS § 2412, Part 1 of 4**

Current through Public Law 119-36, approved September 5, 2025.

*United States Code Service* > *TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE (§§ 1 — 5001)* > *Part VI. Particular Proceedings (Chs. 151 — 190)* > *CHAPTER 161. United States as Party Generally (§§ 2401 — 2460)*

## § 2412. Costs and fees

**(a)**

**(1)** Except as otherwise specifically provided by statute, a judgment for costs, as enumerated in section 1920 of this title [28 USCS § 1920], but not including the fees and expenses of attorneys, may be awarded to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. A judgment for costs when taxed against the United States shall, in an amount established by statute, court rule, or order, be limited to reimbursing in whole or in part the prevailing party for the costs incurred by such party in the litigation.

**(2)** A judgment for costs, when awarded in favor of the United States in an action brought by the United States, may include an amount equal to the filing fee prescribed under section 1914(a) of this title [28 USCS § 1914(a)]. The preceding sentence shall not be construed as requiring the United States to pay any filing fee.

**(b)** Unless expressly prohibited by statute, a court may award reasonable fees and expenses of attorneys, in addition to the costs which may be awarded pursuant to subsection (a), to the prevailing party in any civil action brought by or against the United States or any agency or any official of the United States acting in his or her official capacity in any court having jurisdiction of such action. The United States shall be liable for such fees and expenses to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award.

**(c)**

**(1)** Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for costs pursuant to subsection (a) shall be paid as provided in sections 2414 and 2517 of this title [28 USCS §§ 2414] and shall be in addition to any relief provided in the judgment.

**(2)** Any judgment against the United States or any agency and any official of the United States acting in his or her official capacity for fees and expenses of attorneys pursuant to subsection (b) shall be paid as provided in sections 2414 and 2517 of this title [28 USCS §§ 2414 and 2517], except that if the basis for the award is a finding that the United States acted in bad

faith, then the award shall be paid by any agency found to have acted in bad faith and shall be in addition to any relief provided in the judgment.

**(d)**

**(1)**

**(A)** Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses, in addition to any costs awarded pursuant to subsection (a), incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action, brought by or against the United States in any court having jurisdiction of that action, unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

**(B)** A party seeking an award of fees and other expenses shall, within thirty days of final judgment in the action, submit to the court an application for fees and other expenses which shows that the party is a prevailing party and is eligible to receive an award under this subsection, and the amount sought, including an itemized statement from any attorney or expert witness representing or appearing in behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed. The party shall also allege that the position of the United States was not substantially justified. Whether or not the position of the United States was substantially justified shall be determined on the basis of the record (including the record with respect to the action or failure to act by the agency upon which the civil action is based) which is made in the civil action for which fees and other expenses are sought.

**(C)** The court, in its discretion, may reduce the amount to be awarded pursuant to this subsection, or deny an award, to the extent that the prevailing party during the course of the proceedings engaged in conduct which unduly and unreasonably protracted the final resolution of the matter in controversy.

**(D)** If, in a civil action brought by the United States or a proceeding for judicial review of an adversary adjudication described in section 504(a)(4) of title 5, the demand by the United States is substantially in excess of the judgment finally obtained by the United States and is unreasonable when compared with such judgment, under the facts and circumstances of the case, the court shall award to the party the fees and other expenses related to defending against the excessive demand, unless the party has committed a willful violation of law or otherwise acted in bad faith, or special circumstances make an award unjust. Fees and expenses awarded under this subparagraph shall be paid only as a consequence of appropriations provided in advance.

**(2)** For the purposes of this subsection—

**(A)** "fees and other expenses" includes the reasonable expenses of expert witnesses, the reasonable cost of any study, analysis, engineering report, test, or project which is found by the court to be necessary for the preparation of the party's case, and reasonable attorney fees (The amount of fees awarded under this subsection shall be based upon prevailing market rates for the kind and quality of the services furnished, except that (i) no expert witness shall be compensated at a rate in excess of the highest rate of compensation for

expert witnesses paid by the United States; and (ii) attorney fees shall not be awarded in excess of $125 per hour unless the court determines that an increase in the cost of living or a special factor, such as the limited availability of qualified attorneys for the proceedings involved, justifies a higher fee.);

**(B)** "party" means (i) an individual whose net worth did not exceed $2,000,000 at the time the civil action was filed, or (ii) any owner of an unincorporated business, or any partnership, corporation, association, unit of local government, or organization, the net worth of which did not exceed $7,000,000 at the time the civil action was filed, and which had not more than 500 employees at the time the civil action was filed; except that an organization described in section 501(c)(3) of the Internal Revenue Code of 1954 [1986] (26 U.S.C. 501(c)(3)) exempt from taxation under section 501(a) of such Code, or a cooperative association as defined in section 15(a) of the Agricultural Marketing Act (12 U.S.C. 1141j(a)), may be a party regardless of the net worth of such organization or cooperative association or for purposes of subsection (d)(1)(D), a small entity as defined in section 601 of title 5;

**(C)** "United States" includes any agency and any official of the United States acting in his or her official capacity;

**(D)** "position of the United States" means, in addition to the position taken by the United States in the civil action, the action or failure to act by the agency upon which the civil action is based; except that fees and expenses may not be awarded to a party for any portion of the litigation in which the party has unreasonably protracted the proceedings;

**(E)** "civil action brought by or against the United States" includes an appeal by a party, other than the United States, from a decision of a contracting officer rendered pursuant to a disputes clause in a contract with the Government or pursuant to chapter 71 of title 41 [41 USCS §§ 7101 et seq.];

**(F)** "court" includes the United States Claims Court [United States Court of Federal Claims] and the United States Court of Appeals for Veterans Claims;

**(G)** "final judgment" means a judgment that is final and not appealable, and includes an order of settlement;

**(H)** "prevailing party", in the case of eminent domain proceedings, means a party who obtains a final judgment (other than by settlement), exclusive of interest, the amount of which is at least as close to the highest valuation of the property involved that is attested to at trial on behalf of the property owner as it is to the highest valuation of the property involved that is attested to at trial on behalf of the Government; and

**(I)** "demand" means the express demand of the United States which led to the adversary adjudication, but shall not include a recitation of the maximum statutory penalty (i) in the complaint, or (ii) elsewhere when accompanied by an express demand for a lesser amount.

**(3)** In awarding fees and other expenses under this subsection to a prevailing party in any action for judicial review of an adversary adjudication, as defined in subsection (b)(1)(C) of section 504 of title 5, or an adversary adjudication subject to chapter 71 of title 41 [41 USCS §§ 7101 et seq.], the court shall include in that award fees and other expenses to the same extent authorized in subsection (a) of such section, unless the court finds that during such

adversary adjudication the position of the United States was substantially justified, or that special circumstances make an award unjust.

**(4)** Fees and other expenses awarded under this subsection to a party shall be paid by any agency over which the party prevails from any funds made available to the agency by appropriation or otherwise.

**(5)**

**(A)** Not later than March 31 of the first fiscal year beginning after the date of enactment of the John D. Dingell, Jr. Conservation, Management, and Recreation Act [enacted March 12, 2019], and every fiscal year thereafter, the Chairman of the Administrative Conference of the United States shall submit to Congress and make publicly available online a report on the amount of fees and other expenses awarded during the preceding fiscal year pursuant to this subsection.

**(B)** Each report under subparagraph (A) shall describe the number, nature, and amount of the awards, the claims involved in the controversy, and any other relevant information that may aid Congress in evaluating the scope and impact of such awards.

**(C)**

**(i)** Each report under subparagraph (A) shall account for all payments of fees and other expenses awarded under this subsection that are made pursuant to a settlement agreement, regardless of whether the settlement agreement is sealed or otherwise subject to a nondisclosure provision.

**(ii)** The disclosure of fees and other expenses required under clause (i) shall not affect any other information that is subject to a nondisclosure provision in a settlement agreement.

**(D)** The Chairman of the Administrative Conference of the United States shall include and clearly identify in each annual report under subparagraph (A), for each case in which an award of fees and other expenses is included in the report—

**(i)** any amounts paid under section 1304 of title 31 [31 USCS § 1304] for a judgment in the case;

**(ii)** the amount of the award of fees and other expenses; and

**(iii)** the statute under which the plaintiff filed suit.

**(6)** As soon as practicable, and in any event not later than the date on which the first report under paragraph (5)(A) is required to be submitted, the Chairman of the Administrative Conference of the United States shall create and maintain online a searchable database containing, with respect to each award of fees and other expenses under this subsection made on or after the date of enactment of the John D. Dingell, Jr. Conservation, Management, and Recreation Act [enacted March 12, 2019], the following information:

**(A)** The case name and number, hyperlinked to the case, if available.

**(B)** The name of the agency involved in the case.

**(C)** The name of each party to whom the award was made as such party is identified in the order or other court document making the award.

**(D)** A description of the claims in the case.

**(E)** The amount of the award.

**(F)** The basis for the finding that the position of the agency concerned was not substantially justified.

**(7)** The online searchable database described in paragraph (6) may not reveal any information the disclosure of which is prohibited by law or a court order.

**(8)** The head of each agency (including the Attorney General of the United States) shall provide to the Chairman of the Administrative Conference of the United States in a timely manner all information requested by the Chairman to comply with the requirements of paragraphs (5), (6), and (7).

**(e)** The provisions of this section shall not apply to any costs, fees, and other expenses in connection with any proceeding to which section 7430 of the Internal Revenue Code of 1954 [1986] [26 USCS § 7430] applies (determined without regard to subsections (b) and (f) of such section [26 USCS § 7430(b), (f)]). Nothing in the preceding sentence shall prevent the awarding under subsection (a) of this section of costs enumerated in section 1920 of this title [28 USCS § 1920] (as in effect on October 1, 1981).

**(f)** If the United States appeals an award of costs or fees and other expenses made against the United States under this section and the award is affirmed in whole or in part, interest shall be paid on the amount of the award as affirmed. Such interest shall be computed at the rate determined under section 1961(a) of this title [28 USCS § 1961(a)[, and shall run from the date of the award through the day before the date of the mandate of affirmance.

## History

### HISTORY:

June 25, 1948, ch 646, 62 Stat. 973; July 18, 1966, P. L. 89-507, § 1, 80 Stat. 308; Oct. 21, 1980, P. L. 96-481, Title II, § 204(a), (c), 94 Stat. 2327, 2329; Sept. 3, 1982, P. L. 97-248, Title II, Subtitle G, § 292(c), 96 Stat. 574; Aug. 5, 1985, P. L. 99-80, §§ 2, 6, 99 Stat. 184, 186; Oct. 29, 1992, P. L. 102-572, Title III, § 301(a), Title V, §§ 502(b), 506(a), 106 Stat. 4511, 4512, 4513; Dec. 21, 1995, P. L. 104-66, Title I, Subtitle I, § 1091(b), 109 Stat. 722; March 29, 1996, P. L. 104-121, Title II, Subtitle C, § 232, 110 Stat. 863; Nov. 11, 1998, P. L. 105-368, Title V, Subtitle B, § 512(b)(1)(B), 112 Stat. 3342; Jan. 4, 2011, P. L. 111-350, § 5(g)(9), 124 Stat. 3848; Mar. 12, 2019, P.L. 116-9, Title IV, Subtitle C, § 4201(a)(2), (3), 133 Stat. 763, 764.

United States Code Service
Copyright © 2025 All rights reserved.

End of Document

**Certificate of Service**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the appellate CM/ECF system on December 17, 2025. I further certify that all participants in the appeal are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: December 17, 2025

/s/ Jeffrey P. Gallant
Jeffrey P. Gallant