# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued February 10, 2026          Decided April 10, 2026

No. 25-5219

TRUE THE VOTE, INC.,
APPELLEE

v.

INTERNAL REVENUE SERVICE, ET AL.,
APPELLEES

BOPP LAW FIRM, PC,
APPELLANT

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:13-cv-00734)

———

*James Bopp Jr.* argued the cause for appellant. With him on the briefs was *Jeffrey P. Gallant*.

*Michael J. Lockerby* argued the cause for appellees. With him on the brief was *Kaylan Phillips*. *Geoffrey Klimas*, Attorney, U.S. Department of Justice, and *Syed M. Reza* entered appearances.

2

Before: PILLARD and WALKER, *Circuit Judges*, and ROGERS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* WALKER.

WALKER, *Circuit Judge*: Over the years, several firms have represented True the Vote in a lawsuit against the IRS. After the claims were resolved, the district court awarded attorney's fees to True the Vote. Each firm staked its claim over the award. Bopp Law Firm, the most recent firm to represent True the Vote, filed a motion to enforce its charging lien. The district court denied the motion.

We vacate the judgment of the district court and remand for proceedings consistent with this decision.

## I. Background

From 2013 to 2017, Foley & Lardner, the Public Interest Legal Foundation, and the Center for Constitutional Jurisprudence (collectively, the "Former Attorneys") represented a non-profit named True the Vote, Inc., in its suit against the Internal Revenue Service. Then, in 2017, True the Vote switched attorneys. The Former Attorneys were out, and the Bopp Law Firm was in. Roughly a year later, the district court issued a consent order resolving the claims. *See* JA 1; ECF No. 150. More than another year later, the district court awarded attorney's fees to True the Vote pursuant to the Equal Access to Justice Act (EAJA). According to the court's EAJA calculation of hours times hourly rate, True the Vote is entitled to almost $789,000 in fees. *True the Vote, Inc. v. IRS*, 2023 WL 6164045, at *3 (D.D.C. Aug. 15, 2023).

That raised a question — what percentage of the fee award should each group of attorneys receive? Based on the

3

submissions in support of the EAJA award, the Former Attorneys claim they are entitled to almost $640,000, and Bopp to $150,018.98. *Id.* (ordering supplemental briefing addressing the amount of attorney's fees owed); ECF No. 246 at 4 (Former Attorneys' response); Appellees' Br. 5. Bopp claims, based on its own billing records and fee agreement with True the Vote, that it is entitled to more than $500,000. ECF No. 247 at 5 (Bopp's response).

If none of the attorneys have a lien on the fee award, then True the Vote, the Former Attorneys, and Bopp would resolve this question out of court or in a separate lawsuit. But both the Former Attorneys and Bopp claim they have an equitable charging lien that requires the court to pay them the fees they seek directly out of the fee award, without the money first going to True the Vote. If the Former Attorneys and Bopp each have a lien, then the district court would need to determine whose lien has priority, how much that side is entitled to, and whether the other side is entitled to the rest.

The district court determined that the Former Attorneys have a valid charging lien, *see True the Vote, Inc. v. IRS*, 2023 WL 6164045, at *3, but it denied Bopp's motion for enforcement of its own lien. JA 71. It first determined that the question of whether Bopp has a valid charging lien must be decided under the law of Indiana, Bopp's home state, according to the contractual choice-of-law provision in Bopp's fee agreement with True the Vote. Under Indiana law, the court reasoned, Bopp must show that "there was some agreement, express or implied, that the attorney's compensation would come from that fund, rather than from the client's personal obligation to pay the attorney." JA 67. The district court held that Bopp did not have such an agreement with True the Vote, so Bopp did not have a lien.

4

Bopp appealed.

On appeal, the parties agree that the validity of Bopp's charging lien depends on Indiana law.  At common law, an attorney's charging lien was "a claim to the equitable interference by the court" to hold any judgment "obtained for a client by" that attorney as security for payment of the attorney's fee.  *Lyman v. Campbell*, 182 F.2d 700, 702 (D.C. Cir. 1950) (cleaned up); *see State ex rel. Shannon v. Hendricks Cir. Ct.*, 183 N.E.2d 331, 333 (Ind. 1962).   Like other exercises of equitable discretion, we review the district court's denial of Bopp's charging lien for abuse of discretion, *see Massachusetts v. Microsoft Corp.*, 373 F.3d 1199, 1207 (D.C. Cir. 2004), accepting its findings of fact unless they are clearly erroneous, *see id.*, and reviewing de novo its construction of Indiana state law, *see Salve Regina College v. Russell*, 499 U.S. 225, 231 (1991).

## II. Analysis

The Indiana Supreme Court set forth the framework for equitable charging liens in *Koons v. Beach* (*Koons II*):

> *One test of this claim*, as originally shown, is this: Was the fund secured by the client through the efforts of the attorneys?   *And another is*, was the compensation of the attorney, expressly or by implication, such a charge against the fund as to amount to an assignment of some part thereof?   *In either event* equity will aid the attorney in the enforcement of his claim, ordinarily called a "lien."

46 N.E. 587, 587 (Ind. 1897) (emphases added).

5

That Court has explained that the first type of equitable charging lien stems from the principle that, when an attorney's services "have . . . created the fund," "he ought in good conscience to be protected" via "a lien for his costs upon" that fund.  *Koons v. Beach* (*Koons I*), 45 N.E. 601, 602 (Ind. 1896) (quotation marks omitted).  The second type of such lien recognizes that an agreement between the parties — implied or express — can effectuate an "equitable assignment" of the fund to the attorney.  *Id.* at 603 (quotation marks omitted); *see Koons II*, 46 N.E. at 587 (stating that, where "there was an agreement upon a designated sum, to be paid from the amount recovered," it may be "more accurate" to describe the lien as an "equitable assignment").  A prominent treatise on liens, which *Koons II* cites with approval, *see* 46 N.E. at 587, confirms that distinction.  *See* 1 Leonard A. Jones, A Treatise on the Law of Liens: Common Law, Statutory, Equitable and Maritime §§ 43-44, 153-58 (Boston & N.Y., Houghton, Mifflin & Co. 1888). While other jurisdictions appear to have combined those distinct types under a single test for establishing an attorney's lien, *see* JA 68-69 (citing cases), no cases cited by the parties suggest that Indiana has done so.

Therefore, to establish an equitable charging lien on a fund awarded to an attorney's client by a court, Indiana law requires *either* (1) a showing that an attorney secured the client's fund *or* (2) a showing that the client agreed to pay the attorney from that fund.  "In either event," the attorney has an equitable charging lien.  *Koons II*, 46 N.E. at 587.

The appellees have identified no decision by the Indiana Supreme Court changing the long-ago established framework announced in *Koons II*.  They rely on *Hammond, W. & E.C. Railway, Co. v. Kaput*, 110 N.E. 109, 111 (Ind. Ct. App. 1915), and *Blankenbaker v. Bank of Commerce*, 85 Ind. 459, 461-462 (Ind. 1882).  But *Hammond* was decided by an intermediate

6

appellate court inferior to the Indiana Supreme Court, so *Hammond* could not have overruled either *Koons* case. Nor could *Blankenbaker* because it preceded even *Koons I*. A state's highest court can overrule its prior decisions, so (unlike in a conflict between two D.C. Circuit panel decisions) the last-in-time decision controls when two of its decisions conflict.

The district court erred by requiring Bopp to satisfy *both* parts of the *Koons II* framework — which, again, is an either/or framework. That mistake — understandable in light of the paucity of recent and relevant Indiana authorities — led the district court to deny Bopp's motion for enforcement of the lien. *See* JA 71 ("While [Bopp's] assertions that it has invested significant resources in pursuing the plaintiff's claims in this case may establish that [Bopp's] efforts contributed to the existence of the award of attorneys' fees to the plaintiff in this matter, [Bopp] has made no showing that its compensation was 'expressly or by implication, such a charge against the fund as to amount to an assignment of some part thereof.' Therefore, the Court concludes that [Bopp] has failed to establish that it has a valid charging lien under Indiana law . . . ." (quoting *Koons II*, 46 N.E. at 587) (cleaned up)). So we vacate the district court's decision.

On remand, reconsideration of Bopp's motion for enforcement of the lien may require the district court to decide whether Bopp has established an equitable charging lien under the first *Koons II* prong. On the other hand, at a district court hearing on September 18, 2024, the parties may have agreed that Bopp had an equitable charging lien. *See* JA 36, 39. We express no view on whether Bopp has an equitable charging lien under the first *Koons II* prong.

7

Even if Bopp has a lien, the Former Attorneys may have a lien with priority.   So the district court may need to rule on the priority of the parties' liens.

If Bopp has a lien with priority, the district court may also need to decide whether Bopp's efforts to secure the fee-award entitle Bopp to the amount of money that Bopp seeks.   The fee award is not a pool of money that was won through the efforts of a settlement or damages award, but rather is meant to compensate attorneys for specific billings.   Bopp argues that it is owed more under its lien than the portion of the EAJA award resulting from its submission because the latter compensates at lower hourly rates than Bopp billed under its agreement with True the Vote.   We express no view on the merits of that argument.

On appeal, these issues were either not adequately raised or not adequately briefed.   With more fulsome briefing, the district court is in the best position to decide them first.   We hope that it can quickly bring this thirteen-year-old case to a close.

\*   \*   \*

We vacate the district court's order and remand for further proceedings.

*So ordered.*